IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ELVIN GONZÁLEZ MELÉNDEZ**

**Plaintiff**

     **vs.**   **CIVIL NO. 04-1067 (DRD)**

**K-MART CORPORATION**

**Defendants**

## REPORT AND RECOMMENDATION

Before this Magistrate-Judge is Defendant's Motion for Summary Judgment which contends that Plaintiff's claim of retaliation under Puerto Rico Law Number 115 of December 20th, 1991 should be dismissed. Defendant's Motion was unopposed by Plaintiff. Pursuant to 28 U.S.C. Section 636 and Local Rule 72(d), this Magistrate-Judge now rules on its merits and proceeds to issue the present Report and Recommendation.

### I. PROCEDURAL HISTORY

1.  Plaintiff Elvin González Meléndez (hereinafter "González") filed suit against K-Mart Corporation (hereinafter "K-Mart") on January 30th, 2004 alleging violations to Puerto Rico Law Number 115 of December 20, 1991, 29 L.P.R.A. Section 194 *et seq*.; Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. Sections 5141-5142; the Constitution of the Commonwealth of Puerto Rico and Puerto Rico Act Number 80 of May 30, 1976, 29 L.P.R.A. Section 185(a). González claims retaliation by K-Mart for his participation and testimony in a Federal investigation of K-Mart related to insurance fraud. Docket Number 1.

2.  On December 30th, 2004 the parties filed a Joint Motion Requesting Extension of Time for Discovery. The cut-off date for discovery previously set forth by the Court was December 31st, 2004. Docket Numbers 25 and 34. In addition to requesting an extension of time to complete discovery, both parties requested that the cut-off date for filing of dispositive motions be extended. Docket Number 34.

**CIVIL NO. 04-1067 (DRD)**                    2

3.     On January 21, 2005 an Order was entered granting the parties' joint request for extension of time. The Court specifically set March 31st, 2005 as the cut-off date for discovery, May 2nd, 2005 for filing of all dispositive motions and June 2nd, 2005 for filing of oppositions to any dispositive motions. <u>The Order emphasized that no extensions would be granted.</u> Docket Number <u>35</u>.

4.     On April 29th, 2005 K-Mart filed a Motion for Partial Summary Judgment, accompanied by a Statement of Uncontested Facts and Memorandum of Law In Support of Summary Judgment pursuant Local Rule 7(a) and Federal Rule of Civil Procedure 56. Docket Number <u>41</u>, <u>42</u> and <u>43</u>.

5.     On June 2nd, 2005 González filed a motion for extension of time to file his opposition to Defendant's Motion for Summary Judgment, requesting until June 13th, 2005 to file his reply. Docket Number <u>47</u>. In his motion for extension González stated that he was unable to comply with the deadline set forth by the Court in its Order from January 21st, 2005 because his legal counsel of record, Celina Romany, was litigating another case before Commonwealth Court, and her co-counsel, Félix Bello, was moving to a new office. Docket Number <u>47</u>.

6.     On June 10th, 2005 K-Mart filed an opposition to González's request for extension of time. That motion was predicated on the fact that, upon granting the parties' Joint Motion Requesting Extension of Time for Discovery, the Court had granted the parties until June 2nd, 2005 to oppose any dispositive motions filed by the other party, <u>with the specific limitation that no extensions to this term would be granted by the Court</u>. Docket Number <u>48</u>.

7.     On June 13th, 2005 González failed to file its opposition to Defendant's Motion for Partial Summary Judgment, and instead filed a Second Motion for Extension of Time. This second request for extension of time was filed in excess of ten (10) days after the cut-off date set forth by the Court for filing of oppositions to dispositive motions, and on the same day that González had previously informed the Court it would file its opposition to Defendant's Motion for Partial Summary Judgment. Docket Number <u>51</u>.

**CIVIL NO. 04-1067 (DRD)**                     3

8.      On June 14th, 2005 González finally filed its opposition to Defendant's Motion for Partial Summary Judgment, twelve (12) days after the cut-off date originally set forth by the Court had expired, and after filing two (2) different and untimely requests for extension of time. Additionally, González failed to file the Statement of Uncontested Facts required by Local Rule 56(c). Docket Number 52.

9.      On June 14th, 2005 K-Mart moved to strike González's opposition to Defendant's Motion for Partial Summary Judgment. Docket Number 54.

10.     On July 29th, 2005 the Court ruled in favor of this Motion to Strike and denied both of González's Motions for Extension of Time. Docket Number 61.

11.     On August 5th, 2005 González filed a Motion for Reconsideration of the Court's Order of July 29th, 2005. Docket Number 62. K-Mart filed an opposition to this motion on August 11th, 2005. Docket Number 63. On January 13th, 2006 the Court denied González's Motion for Reconsideration. Docket Number 68.

## II. THE SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to view the pleadings and examine the parties' evidence to determine whether or not a trial is actually necessary. *See:* Vega Rodríguez v. Puerto Rico Tel. Co., 110 F3d 174 (1st Cir., 1997). Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment must be granted if, based on the pleadings, depositions and answers to interrogatories or request for admissions, as well as any sworn statement or affidavit, it can be shown or evidenced that there exists no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See:* Santiago Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000); Carmona v. Toledo, 215 F.3d 124 (1st Cir. 2000); Serapion v. Martínez, 119 F 3d 982 (1st Cir., 1997); McCarthy v. Northwest Airlines, Inc., 56 F 3d 313 (1st Cir., 1995). Lipsett v. Univ. of P.R., 864 F. 2d 881, 894 ( 1st Cir. 1988). A fact is material "if, under applicable substantive law, it may affect the outcome of the case." An issue is genuine "only if there is conflicting evidence that requires a trial to resolve the disagreement." *See:* Ortega Rosario v. Alvarado Ortiz, 917 F2d 71 (1st Cir., 1990).

**CIVIL NO. 04-1067 (DRD)**   4

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See:* Hinchey v. NYNEX Corp., 144 F 3d 134 (1st Cir., 1998). Nevertheless, this burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *See:* Celotex Corp. v. Catrett, 477 U.S. 317 (1986). After such showing, the burden shifts to the nonmoving party, with respect to each issue on which it has the burden of proof, to demonstrate that a trier of fact could reasonably find in its favor. *See:* DeNovellis v. Shalala, 124 F 3d 298 (1st Cir., 1997); Celotex Corp. v. Catrett, *Supra*.

The summary judgment standard considers whether the fact finder's decision is inevitable even when all evidence is viewed in the light most favorable to the non-moving party and all reasonable inferences therefrom are shaped to fit that party's theory of the case. *See:* Reeves v. Sanderson, 530 U.S. 133 (2000); Leahy v. Raytheon Co., 315 F.3d 11 (1st Cir. 2002); Griggs-Ryan v. Smith, 904 F2d 112 (1st Cir., 1990).  To determine whether the criteria to grant a summary judgment has been met, the Court must "pierce the boilerplate of the pleadings" and carefully review the parties' submissions to ascertain whether they reveal a trialworthy issue as to any material fact. *See:* Euromodas v. Zanella, 368 F3d 11 (1st Cir., 2004); Pérez v. Volvo Car Corp., 247 F.3d 303 (1st Cir. 2001); Cortés-Irizarry v. Corporación Insular, 111 F 3d 184 (1st Cir., 1997).

 "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." *See:* Anderson v. Liberty Lobby, Inc., supra, at 252; Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13 (1st Cir. 2000).  As such, merely corolable evidence, or evidence that is not significantly probative, is insufficient to grant summary judgment. *See:* Basic Contolex Corp., Inc. v. Klockner Moeller Corp., 202 F.3d 450 (1st Cir. 2000).  Federal Rule of Civil Procedure Number 56(c)  also sets forth that the nonmoving party may not merely rest on the allegations contained on its Answer to the Complaint, nor on mere denial of the moving party's allegations and pleadings, but must actually set forth and advance specific facts which evidence that there exists a genuine issue for trial.

**CIVIL NO. 04-1067 (DRD)**          5

The non-moving party cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. Not every controversy is sufficient to preclude summary judgment. Where the non-moving party has the burden of proof on a critical issue and the evidence that it proffers in opposition to summary judgment is so vague that it could not prevail at trial, the motion must be granted. See: Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999); Pérez v. Volvo Car Corp., supra (1st Cir. 2001).

Motions for summary judgment are decided on the record as it stands, not on the pleadings or the non-moving party's vision of what specific facts might some day be "unearthed by the litigation equivalent of an archeological dig". Consequently, to ward off a properly documented motion for summary judgment, the non-moving party must produce enough proof to enable his or her case to get to a jury. Rogan v. City of Boston, 267 F. 3d 24 (1st Cir. 2001). The Court may safely ignore conclusory allegations, empty rhetoric, improbable inferences, and unsupported speculation, or evidence which, in the aggregate, is less significantly probative, even in cases where elusive concepts such as motive and intent are at issue. Magarian v. Hawkins, 2003 WL 555846 (1st Cir. 2003); Hershey v. Donaldson, Lufkin & Jenrette Securities, 317 F.3d 16 (1st Cir. 2003) ; Caroll v. Xerox Corp., 294 F.3d 231 (1st Cir. 2002); Straughn v. Delta Airlines, Inc., 250 F.3d 23 (1st Cir. 2001); Feliciano de la Cruz v. El Conquistador Resort, 218 F.3d 1 (1st Cir. 2000); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Local Rule Number 56(b) requires that a motion for summary judgment include a separate statement of the material facts as to which the moving party contends there exists no genuine issue to be tried, along with the basis of such contentions as to each material fact, duly supported by specific reference to the record. *See* United States District Court for the District of Puerto Rico, Local Rules of the Court, Rule 56(b). These material facts are deemed admitted unless the non-moving party files a timely opposition that includes a separate, short and concise statement of material facts admitting, denying or qualifying the facts by reference to each, and supporting each denial or qualification. *See* United States District Court for the District of Puerto Rico, Local Rules of the Court, Rule 56(c).

**CIVIL NO. 04-1067 (DRD)**                                                    6

González failed to properly and timely oppose the motion for summary judgment filed by K-Mart by omitting the required statement of uncontested material facts. Although González filed an opposition to K-Mart's Motion for Partial Summary Judgment, such opposition was filed twelve (12) days after the cut-off date set forth by the Court at the parties' behest. This breach in the Court's Scheduling Order was not warranted. Defendant's Motion to Strike González's Opposition to Summary Judgment was therefore granted and González's untimely opposition was struck from the record.

The First Circuit Court of Appeals has held that "failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the Court's deeming the facts presented in the movant's statement of undisputed facts admitted" and "accepting as true all of the Defendant's properly supported statements of uncontested facts." *See:* Monge v. Cortés, Civil No. 04-1596 (JP), Opinion and Order issued on January 23rd, 2006; Ruiz Rivera v. Riley, 209 F3d 24 (1st Cir., 2000); Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F3d 86 (1st Cir., 1996); Rivas v. Federación de Asociaciones Pecuniarias, 929 F2d 814 (1st Cir., 1991). The statement of uncontested facts filed by Defendant is hereby deemed unopposed and admitted.

### III. DISCUSSION

*A.     **Retaliation under Puerto Rico Law Number 115***

Puerto Rico Law Number 115 of December 20, 1991, 29 L.P.R.A. Section 194, provides that the collaboration or expressions made by an employee before an administrative, judicial or legislative forum cannot constitute just cause for adverse action by the employer. 29 L.P.R.A. Section 194a(a).

To succeed in a retaliation claim under Law 115, a causal relationship must be established between a Plaintiff's participation in a protected activity and the ensuing adverse employment action by the Defendant employer. Once these facts are set forth on the record, a *prima facie* case is established, and then the employer must provide a legitimate business reason for the adverse employment action. If the employer is able to provide such a reason, the employee must then demonstrate that the professed reason or justification for the adverse employment action was a mere pretext or sham.

**CIVIL NO. 04-1067 (DRD)**                                              7

An employee may establish a cause of action pursuant to Law 115 either through the presentation of direct evidence of retaliation, or through the so-called McDonnell Douglas scheme, which states that absent direct evidence, the Plaintiff must bring forth evidence showing that: (1) he or she engaged in a statutorily protected activity; (2) his or her employer thereafter subjected him or her to adverse employment action; and (3) the adverse employment action was taken as a reprisal for having engaged in the protected activity. *See:* McDonnell Douglas v. Green, 411 U.S. 792 (1973); Hernández Torres v. Intercontinental Trading, 158 F3d 43 (1st Cir., 1998); Mesnick v. General Electric, 950 F2d 816 (1991); P.R. Laws Ann. tit. 29 §194 a (c). The employee maintains the ultimate burden of proof at all times throughout this exercise. *See:* Miller v. New Hampshire Department of Corrections, 2001 U.S. Dist. LEXIS 19239 (2001).

In order to successfully argue that retaliatory animus was present at the time of the adverse employment action, the existence of a causal connection between the protected conduct and the adverse employment action must be established. Plaintiff must present evidence that the employer's adverse action was motivated by a retaliatory animus to the protected activity. The critical inquiry to be made and adjudged is whether the aggregate of the evidence of pretext and retaliatory animus suffices in order to meet the Plaintiff's burden of establishing the causal nexus. *See:* Mesnick v. General Electric, *Supra.*

Only when the Plaintiff has established that an unlawful animus was the motivating factor in an adverse employment decision is there a greater burden on the employer. In such case, the employer would have to prove by a preponderance of the evidence that the same employment decision would have been made absent the illegal motivation. Otherwise, if the Plaintiff does not bring forth any direct evidence of discriminatory or retaliatory animus the employer must merely articulate a plausible, non-discriminatory reason for the adverse employment action taken against him. *See:* Ramírez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F3d 67 (1st Cir., 2005); Nixa Ramos v. Roche Products, 936 F2d 43 (1st Cir., 1991); Fields v. Clark University, 817 F2d 931 (1st Cir., 1987). The employer's burden is one of production, not of persuasion, and as such it is merely directed to articulate a valid reason for its decision. The question to be asked at that point is not

**CIVIL NO. 04-1067 (DRD)**                         8

whether or not the employer's action was wise or even warranted, but rather simply whether or not the reason given for the action was a sham or pretext for discriminatory or retaliatory animus. *See:* Menard v. First Sec. Services Corp., 848 F2d 281 (1st Cir., 1988); Nixa Ramos v. Roche Products, *Supra.*

The Puerto Rico Supreme Court has found that, in proving the existence of a *prima facie* case under Law 115, mere conclusory allegations and theories of retaliation set forth by the Plaintiff will not and cannot establish a *prima facie* case. Hernández v. Espinosa, 145 D.P.R. 248 (1998). Additionally, the adjudging Court should consider whether or not the Plaintiff has established a causal link or connection between the protected activity and the adverse employment action. One of the primary factors in considering the existence of this connection is the length of time that transpired between both the protected activity and the adverse employment action. Hernández v. Espinosa, *Supra*; Acevedo Martínez v. Coatings, Inc., 286 F.Supp 2d 107 (2003); Madeja v. MPB Corp, 821 A2d 1034 (N.H., 2003). A showing of adverse employment action soon after the employee's participation in the protected activity is indirect proof of a causal connection between the employment action and the protected activity, because it is strongly suggestive of retaliation. Conversely, no inference of retaliatory motive crystalizes when the protected activities are not closely followed by an adverse action. Oliver v. Digital Equipment Corp., 846 F2d 103 (1st Cir., 1988); Chávez v. City of Arvada, 88 F3d 861 (10th Cir., 1996); Arocho v. Department of Labor, 218 F.Supp 2d 145 (2002).

Besides temporal proximity other sources of circumstantial evidence that can evidence retaliation may be brought forth, including evidence of differential treatment and statistical evidence showing disparate treatment. Mesnick v. General Electric, *Supra*. When a Plaintiff lacks direct evidence of discriminatory and retaliatory animus, proof is required to show that the amount of time between the protected activity and the adverse employment action was brief enough to suggest a logical connection, or that the treatment given to the Plaintiff due to the protected activity was significantly worse than that afforded to other employees. The main evidentiary standard is to prove causal connection between a protected activity and adverse employment action and that, but for the

**CIVIL NO. 04-1067 (DRD)**                              9

protected activity the employee would not have been subjected to the adverse employment action. Villiarimo v. Aloha Island, 281 F3d 1054 (9th Cir., 2002); Hernández Torres v. Intercontinental Trading, *Supra;* Arocho v. Department of Labor, *Supra*.

      ***B.***      ***The uncontested facts do not reveal a logical connection between the protected activity and the adverse employment action***

González claims that there is a causal link between his alleged collaboration with the Federal investigation in 1999 and 2000, K-Mart's filing for bankruptcy on or around January of 2002 and his termination from employment in 2003. This contention is unfounded and is solely based on conjecture, speculation and unsupported assumptions. González has not produced any evidence in support of the occurrence of the aforementioned chain of events.

In short, González's allegation can be summarized thusly: first, that his collaboration with Federal authorities brought about the imposition of a fine in excess of two million dollars ($2,000,000) against K-Mart for its fraudulent practices in its Puerto Rico operations in October, 2002; second, that this fine caused K-Mart Corporation to file for bankruptcy and eliminate its International Division; and third, that the elimination of the International Division provoked the demotion or brought about pay cuts for several employees, which in turn motivated them to harass him and to conspire to "fabricate" a case to justify his termination from K-Mart.

The uncontested facts in the present case do not reveal the existence of a logical causal link or nexus between the protected activity and the adverse employment action, to wit:

      ***a.***      ***K-Mart did not file for bankruptcy for any reason related to the Federal investigation***

In its Motion for Partial Summary Judgment K-Mart has presented sworn testimony that neither its filing for bankruptcy nor its elimination of the International Division were in any way linked to the Federal investigation that González allegedly collaborated with. ***Statement of Uncontested Facts ("SUF") 19 and 20.***

**CIVIL NO. 04-1067 (DRD)**                    10

K-Mart has presented sworn testimony by Regional Operations Analyst Director James Mesenbring that K-Mart actually filed for bankruptcy and eliminated its International Division as a direct consequence of a major cash-flow situation at the national corporate level, whereby K-Mart's major vendor stopped sourcing K-Mart with their consumables, and thus caused K-Mart not to have sufficient inventory for its stores. This, coupled with other major vendors' decision to also stop supplying to K-Mart, created a cash-flow issue in which K-Mart was not able to fund ongoing operations and acquisition of inventory. No other issue related to K-Mart's Puerto Rico operations was mentioned by Messenbring as having anything to do with either the filing of bankruptcy or the elimination of the International Division. ***SUF Nos. 19 and 20.***

***2. The lack of temporal proximity between the protected activity and the adverse employment militates against a finding of retaliatory animus***

González alleges that he collaborated with the Federal Bureau of Investigation on or around March or April of 1999 and that he was subsequently called to testify before a Grand Jury on or around July or August of 2000. ***SUF No. 7 and 8***. He was terminated on September 5, 2003, more than three (3) years after his appearance before the Grand Jury, and more than four (4) years after collaborating with the F.B.I. in its investigation. ***SUF Nos. 17, 22 and 38.***

From this chronology it is evident that González has failed to meet even the modest burden of establishing that because he participated in a protected activity, he was "subsequently" discharged, threatened or discriminated. The very language of Law 115 and the applicable interpretative caselaw suggests that to prove a *prima facie* case of retaliation Plaintiff must establish a causal link or connection between the protected activity and the adverse employment action. While the length of time that transpired between the protected activity and the adverse employment action is not the sole criterion for establishing this causal link, the Puerto Rico Supreme Court has held that it is one of the primary factors. *See:* Hernández v. Espinosa, *Supra*. In the past, various Federal Courts have upheld a similar proposition in other retaliation cases, to wit:

a.   In Oliver v. Digital Equipment Corp., *Supra*, the United States Court of Appeals for the First Circuit found that a Plaintiff who filed charges with the EEOC in March of 1981 and was

**CIVIL NO. 04-1067 (DRD)**                    11

terminated in December 1983 has not proven a reasonable causal connection between the protected activity and the adverse employment decision.

b.       In <u>Mesnick v. General Electric</u>, *Supra*, the United States Court of Appeals for the First Circuit found that a nine (9) month gap between the Plaintiff's filing of charges with the Equal Employment Opportunity Commission and his termination was too long for the Court to infer the existence of a causal connection.

c.       In <u>Candelaria v. E.G. & G. Energy Measurements, Inc.</u>, 33 F3d 1259 (10th Cir., 1994), the United States Court of Appeals for the Tenth Circuit found that no causal connection can be inferred when the protected activity preceded the adverse employment action by as much as three (3) years.

d.       In <u>Chávez v. City of Arvada</u>*, Supra*, the United States Court of Appeals for the Tenth Circuit concluded that a ten (10) year gap between filing of charges before the EEOC and the adverse employment action could not establish a causal connection between the two events.

e.       In <u>Villiarimo v. Aloha Island</u>, *Supra*, the United States Court of Appeals for the Ninth Circuit concluded that an eighteen (18) month lapse between the protected activity and the adverse employment action is too long to infer a causal connection between the two events.

f.       In <u>Ramírez v. Boehringer Ingelheim Pharmaceuticals, Inc.</u>, *Supra,*, the United States Court of Appeals for the First Circuit upheld the District Court's granting of summary judgment in favor of Defendants on the grounds that the fact that Plaintiff had been terminated two (2) months after protected activity did not establish the existence of causal link between the two events.

González allegedly collaborated with the F.B.I. on or around 1999. He claims to have appeared before a Federal Grand Jury on around the year 2000. Since González was terminated on September 5th, 2003, his alleged participation in protected activities pre-dated his termination by at least three (3) years. These activities are separated from his termination by K-Mart by a long enough period of time so as to suggest that his termination was not related to these events. Therefore, this Magistrate-Judge finds that the protected activities are separated from his termination by K-Mart by a long enough period of time so as to suggest that his termination was not related to these events.

**CIVIL NO. 04-1067 (DRD)**                    12

*3. Those who terminated González had no connection to the Federal investigation*

At some point between the alleged protected activity and González's termination, K-Mart's Puerto Rico operations were overhauled to such an extent that by González's own admission, only Lynda Pantoja and Rolando Cruz remained from the prior management-level echelon of K-Mart's Puerto Rico operations from the time of the Federal investigation to the date of González's termination. ***SUF No. 30.*** Additionally, Randy Colbus and Mike Limauro, the persons who made the decision to terminate González, were not in any way involved or related to the Federal investigation. In fact, neither of them had a personal or friendly relationship with Cruz, who González claims orchestrated the "fabrication" of a case which led to his dismissal from K-Mart. Furthermore, the persons who ultimately terminated González had no history of animosity towards him. ***SUF Nos. 34, 35, 36 and 37.***

These uncontested facts militate against any finding of a rational causal link or nexus between the protected activity and the adverse employment action, and therefore refute any inference of retaliation, particularly when direct evidence is absent. This is so, because the persons who actually terminated González had no ulterior motive for doing so, it is illogical to suggest or infer that any retaliatory animus motivated K-Mart's decision to terminate González.

*4. González received several promotions and pay increases from the time the protected activity took place until his termination from K-Mart*

After González's alleged collaboration with Federal authorities his career path with K-Mart was consistently upward-moving. Prior to his termination González had not suffered any adverse employment action, and had actually received both promotions and pay increases: on July 1, 2001 he received a pay increase by K-Mart, ***SUF No. 14;*** on November 29, 2001 he was promoted to Store Manager of K-Mart store number 9326, ***SUF Nos. 11 and 13;*** on June 16, 2002 he received another pay increase, ***SUF No. 14;*** and on September 5, 2002 he was promoted to Store Manager of K-Mart store number 7665, ***SUF Nos. 12, 13 and 15.*** For this last promotion, which was practically one year before his termination, González received a pay increase. ***SUF No. 15.***

**CIVIL NO. 04-1067 (DRD)**                                   13

This pattern of promotions and pay increases received by González impedes or negates finding a logical connection between his purported participation in a protected activity and his termination of employment approximately four years later, specially considering the fact that all of these promotions and pay increases were awarded to González by K-Mart <u>after</u> he had allegedly collaborated with the Federal investigation of K-Mart, and that the last such favorable employment action took place less than one year before González's termination. ***SUF No. 15.*** The evidence before the Court is that González's career path with K-Mart mirrored that of other associates who participated in the same protected activity up to and until the date of his termination. Several management-level associates at both the store and corporate level who collaborated with the Federal investigation which led to the imposition of a fine against K-Mart Corporation are still with the Company and have not been demoted nor received a pay cut at any time after participating in the protected activity in question. ***SUF No. 6.***

González has failed to prove a rational causal connection between the alleged protected conduct and the adverse employment action in order to successfully sustain a claim of retaliation. The uncontested facts on record bar him from successfully proving such connection and ultimately proving the existence of retaliation. González has not proven that the adverse action taken by K-Mart was motivated by the protected activity or that but for this protected activity he would still be working for K-Mart.

  ***C. The uncontested facts disprove the existence of a conspiracy to terminate González***

In cases where retaliatory animus is alleged the employee maintains the ultimate burden of proof and cannot rest on mere conclusory allegations and theories of retaliation in an effort to establish a *prima facie* case. *See:* <u>Hernández v. Espinosa</u>, 145 D.P.R. 248 (1998); <u>Miller v. New Hampshire Department of Corrections</u>, *Supra.* This is exactly what González has attempted to do in this case. He admitted in his deposition that he had no knowledge of the scheme whereby he alleges he was framed and ultimately terminated by K-Mart in retaliation for his collaboration with

**CIVIL NO. 04-1067 (DRD)**             14

the Federal investigation of insurance fraud, and that "[he] didn't hear it nor did [he] see it in documents".*SUF No. 33.*

González also alleges that Loss Prevention District Manager Rolando Cruz (hereinafter "Cruz") and Human Resources Director Lynda Pantoja (hereinafter "Pantoja") were the persons who took an active part in forcing his dismissal from the Company. However, in his own deposition González admitted that neither one of these persons had the authority or power to terminate him. *SUF Nos. 31 and 32.*

González alleges that Cruz orchestrated a scheme to bring about his dismissal from K-Mart. González also alleges that Cruz acted in this manner because he was demoted upon K-Mart's filing for bankruptcy and the subsequent elimination of the International Division. **Docket Number 1.**

K-Mart has come forth with evidence that Cruz was demoted by Randy Colbus (hereinafter "Colbus") and replaced by Mike Limauro (hereinafter "Limauro"), both of whom made the actual decision to terminate González. Cruz was not the person who carried out the investigation of González which subsequently brought about his termination, but it was actually Loss Prevention District Manager Ramón Nieves (hereinafter "Nieves") who completed the investigation, based on the written statements of witnesses (none of whom was Cruz) and presented the results of the investigation to Limauro and Colbus, who terminated González. *SUF Nos. 34 and 35.* By González's own admission, Cruz was not even entrusted with the duty of supervising him, so he could not have possibly conducted the investigation in question, much less terminated him. *SUF Nos. 32 and 36.*

González alleges that Pantoja had previously harassed him by denying him a relocation expense to which he alleged he was entitled to when he was transferred from K-Mart's store in Las Catalinas to the Juncos Store. K-Mart has provided clear documentary evidence to demonstrate that González was informed that he did not qualify for this expense, and that he subsequently accepted this explanation and agreed to reimburse it. This refutes any allegation regarding Pantoja's involvement in any scheme against him. *SUF No. 16.* Additionally, K-Mart has provided evidence

**CIVIL NO. 04-1067 (DRD)**                          15

that Pantoja's salary was not reduced after K-Mart's filing for bankruptcy and subsequent elimination of the International Division, so it could scarcely be claimed that she had cause to seek vengeance against him. *SUF No. 6.*

The uncontested facts on record suggest that González is unable to articulate how employees at K-Mart allegedly conspired to have him terminated in retaliation for his collaboration with Federal authorities. Furthermore, the evidence brought forth by K-Mart in support of its statement of uncontested facts suggest that such a conspiracy never existed. These facts, coupled with González's failure to prove a logical causal link between the protected activity and the adverse employment action, bar him from successfully setting forth a *prima facie* case of retaliation under Law 115.

> ***D.     The uncontested facts suggest González was terminated for a legitimate, non-retaliatory business reason***

Defendant's Motion for Partial Summary Judgment was left unopposed by González. Even if the Court were to view the facts of the case in the light most favorable to González, its conclusion would still be that he was terminated for a non-retaliatory, non-discriminatory reason. K-Mart did not stray from its policies, which clearly prohibit the manipulation of inventory. K-Mart has brought forth proof that it has consistently enforced its integrity-related policies to such an extent that other employees who have breached them have also been terminated, including an instance in which an entire division of the Company was terminated for failing to comply with these policies. *SUF No. 21.*

As a matter of uncontested fact, the reason given by K-Mart for terminating González was "violation of corporate policy". *SUF No. 38.* The evidence brought forth before the Court clearly shows that the decision to terminate González was made by Randy Colbus and Mike Limauro after studying and considering an investigation completed and submitted by Loss Prevention District Manager Ramón Nieves. The investigation concluded that González had included several useless, defective and incomplete items as part of his Store's inventory, in clear and gross violation of Company policy. *SUF No. 34.* González himself admitted under oath that he included this

**CIVIL NO. 04-1067 (DRD)**                16

merchandise in the inventory. ***SUF No.26.*** By González's own admission, it remains uncontested that he had no personal with or professional problems or animosity towards either Nieves or Limauro, and that neither Colbus nor Limauro were in any way related to the Federal investigation of insurance fraud. ***SUF Nos. 34, 36 and 37.***

Furthermore, several Store associates who participated in the inventory process, namely Madeline Burgos, María Báez, Martín Morales and Ada Corcino provided Nieves with written statements in which they ascertained that González specifically instructed them to include mismatched merchandise, as well as merchandise which would later be discarded, as part of the Store's inventory. ***SUF No. 26.***

K-Mart's clear and express policies specifically provide that "[f]alsely stating the value of physical inventories", "[i]mproperly recording selling price adjustments in a manner that misstates book inventory and reported inventory shrinkage", "record[ing] known stolen merchandise", "inventory manipulation of any kind", as well as any other practice which manipulates or misstates the accounts, records or inventories of K-Mart is expressly prohibited, whether these misstatements are intentional or not. This ethical standard has grown in importance after K-Mart's filing for bankruptcy, to the point that K-Mart is now required by Federal law to certify that it and its agents and employees are reporting accurate data, and that practically an entire division of the Company was terminated for failing to adhere to this standard. ***SUF No. 21.*** Furthermore, K-Mart's policies also state that "[a]ccurate, consistent and truthful record keeping at store level is the responsibility of the Store Manager" and that when in doubt, the Store Manager must consult with his or her supervisors for specific directions as to how to proceed. ***SUF No. 25.***

The record shows that, as of August 25, 2003, Plaintiff Elvin González Meléndez had been a K-Mart associate for almost twenty (20) years. ***SUF No. 1.*** He had been a Store Manager for a substantial portion of his tenure with K-Mart Corporation, and was reputed to be a very knowledgeable Store Manager. Additionally, as with all Store Managers, he had been provided continuous access to the Company's various policies and procedures and must have had undertaken

**CIVIL NO. 04-1067 (DRD)**               17

and completed the preparation of dozens of inventories. Notwithstanding the above, he acted in direct contravention to K-Mart's basic policies of record-keeping and integrity in store reporting, and expressly instructed his Store associates to proceed in a manner which was contrary to Company policies. ***SUF No. 26.***

González cannot claim ignorance or lack or knowledge as to how to proceed in the preparation of Store inventory because, in addition to his vast knowledge and experience, he had at his disposal the know-how and assistance of his supervisors, as well as of the Loss Prevention Department. Nevertheless, it is an uncontested fact that during the preparation of inventory in K-Mart Store 7665, González did not consult with his direct supervisor or Loss Prevention personnel concerning any doubts or questions that he might have had regarding the integrity or accuracy of the inventory. ***SUF No. 28.*** If he had done so, González would have been told that K-Mart's policies and procedures expressly barred him from including lost, incomplete or damaged merchandise. ***SUF No. 27.***

González would be hard-pressed to credibly allege that the aforementioned uncontested facts do not warrant his termination from K-Mart, much less that the decision to terminate him was so far-fetched and illogical that it must have constituted a sham or pretext for retaliatory animus. For one, the facts hereby deemed as uncontested are supported by the Plaintiff's own statements at his deposition, as well as the written statements that he and several Store associates provided to Loss Prevention District Manager Ramón Nieves during his investigation of the facts. ***SUF No. 26.*** Additionally, at the time of González's termination K-Mart already had in place several policies which had been provided and made accessible to González, and which clearly and specifically forbade Store Managers from including the sort of merchandise he included as part of the inventory, as well as forbidding any practice which could jeopardize the integrity and truthfulness of the Company's records and inventories. ***SUF Nos. 21 and 27.***

## IV. CONCLUSION

In sum, while González is not able to bring forth any circumstantial, much less direct, evidence in support of a *prima facie* case of retaliation under Act Number 115, Defendant K-Mart

**CIVIL NO. 04-1067 (DRD)**                                      18

Corporation is able to articulate a valid and legitimate business reason for terminating González, specifically his violation of Company policy which relates to K-Mart's demand for integrity in the reporting of its inventory and assets by its associates, specially management-level associates. González's conspiracy theory requires a sizeable leap of faith in order to conclude that his collaboration with a Federal investigation in Puerto Rico in 1999 brought about his termination in 2003 through a series of events which have not been properly or reasonably explained, much less proven. Pursuant to the applicable caselaw on retaliation claims, the reason brought forth by K-Mart in justification for terminating González is logical, plausible, non-pretextual and non-discriminatory on its face and, given that the relevant question to be assessed is whether the reason for terminating Plaintiff was discriminatory or not, and not whether or not it was a wise or warranted decision, K-Mart has satisfied its burden of bringing forth a valid reason for the termination. In sum, González is not able in any way to prove that, but for his participation in the Federal investigation of K-Mart, he would still be working with the Company. Therefore, his retaliation claim under Public Law Number 115 must be summarily dismissed, with prejudice.

González has also set forth allegations of violation of Constitutional Rights and has alleged damages under Articles 1802 and 1803 of the Puerto Rico Civil Code. From the text of the Complaint, it can be ascertained that González has not set forth any specific allegations other than the alleged retaliation pursuant to Law Number 115, including any allegations of discrimination or harassment in support of his alleged damages claimed under Articles 1802 and 1803 of the Puerto Rico Civil Code. Consequently, the cause of action under the Constitution of the Commonwealth of Puerto Rico, as well as the cause of action for alleged damages are solely predicated on K-Mart's alleged retaliatory actions in terminating González. Once the cause of action for retaliation has been dismissed, all causes of action which are factually tied to it must also topple. Therefore, insofar as the cause of action under Puerto Rico Act Number 115 is dismissed, any other allegations tied to this cause of action must also be dismissed, since they lack any other reason for being supported by specific allegations in the Complaint.

**CIVIL NO. 04-1067 (DRD)**                    19

González lacks a cause of action under Puerto Rico Act Number 115 and Defendant's Motion for Partial Summary Judgment must therefore be granted. González's claims under Puerto Rico Act Number 115 of December 20, 1991, Articles 1802 and 1803 of the Puerto Rico Civil Code and the Constitution of the Commonwealth of Puerto Rico, hence, must be dismissed.

Under the provisions of 28 U.S.C. § 636 and Local Rule 72(d), District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111(1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

**SO RECOMMENDED.**

In San Juan, Puerto Rico, this 31st day of January, 2006.

*S/ Gustavo A. Gelpi*

**GUSTAVO A. GELPI**
United States Magistrate-Judge